## J. D. MARKWOOD v. OLSON MANUFACTURING COMPANY.[1]

January 26, 1940.

No. 32,319.

*Guesmer, Carson & MacGregor* and *Donald F. Pratt,* for appellant.

*Meighen, Knudson & Sturtz,* for respondent.

LORING, JUSTICE.

This was an action to recover a balance claimed under a contract by the defendant to pay royalties for the exclusive right to use plaintiff's patents in the manufacture of machines designed to wash drinking glasses. The case comes here upon appeal by

[1]Reported in 289 N. W. 830.

the plaintiff from an order sustaining the defendant's demurrer to the complaint.

Whether or not there is a balance due the plaintiff depends upon the tenor of a contract between the parties by them designated a "royalty agreement" executed on December 23, 1936, and modified February 10, 1939. Both contracts were made while plaintiff's applications for patents were pending. The applications covered inventions for the cleansing of beverage and other glasses, used in a machine known as the "Markwood Glass Washer." The contract gave the manufacturer (defendant in this action) the exclusive right to manufacture and sell the washer and provided for a royalty of ten dollars each on the first 1,000 washers so manufactured and sold, and a further royalty of $2.50 each on the second 1,000 washers so manufactured and sold, after which the patent or patents were to be assigned to the defendant without further payment. In the meantime, the defendant was to advance to the inventor a minimum of $150 per month to be applied against the royalty account. It was provided, however, in this first contract:

"This agreement may be terminated by the Manufacturer at any time by giving ten days' notice in writing to the Inventor, which notice may be either served upon the Inventor, or mailed in the usual course. * * * Other than as herein stated in event of cancellation of this agreement by either party, there shall be no further claim by one party against the other for damages for such cancellation or for unfulfillment of any of the covenants of this contract. It is not to be understood that the Manufacturer shall be required to continue with the payment of the sum of $150.00 per month, or any other sum, to the Inventor for royalty or for any other purpose in case this contract is cancelled."

The second contract, made in 1939 and by the parties signed and designated "Supplemental Royalty Agreement," was evidently made to give the plaintiff a royalty of $3.50 upon another patent on a machine known as the "Olson Electric Glass Washer," but

the total sum upon the payment of which the defendant was to become the sole owner of plaintiff's patents was not increased above the $12,500 provided for in the original contract. In this supplemental agreement reference is made to a former supplemental agreement, but it is conceded that no such agreement was ever executed. It was stated in the supplemental agreement of February, 1939:

"The within agreement is to be considered as a second supplemental agreement thereto [referring to the original agreement], and, except as herein modified or changed in any respect, all of the provisions contained in said two former agreements are hereby renewed and confirmed by the parties hereto. The fulfillment of this agreement is subject only to and contingent upon the granting by the Commissioner of Patents of the United States of the patent applied for by the Inventor upon the Markwood Glass Washer hereinafter mentioned."

It then provided for the payment of the $10 and the $2.50 royalties upon the Markwood Glass Washer as had been provided in the original contract, and this provision was added:

"$3.50 each on all Olson Electric Glass Washers sold, with a minimum monthly advance against such royalties of $150.00.

"It is further agreed that when the royalties so paid or credited to the Inventor by the Manufacturer total the sum of $12,500.00 the Manufacturer shall become the sole owner of any patent or patents which may have been issued to the Inventor covering said washer or any improvements thereon, and the Inventor shall thereupon execute and deliver to the Manufacturer all necessary assignments thereof.

"It is further agreed that when the royalties so paid or credited to the Inventor by the Manufacturer total the sum of $12,500.00 then all of said royalty agreements shall be immediately cancelled, and the Manufacturer shall not be held liable for the payment of any further royalties to said Inventor."

There is no provision in the supplemental contract like the clause in the original contract providing for cancellation by the defendant upon ten days' notice.

It is alleged in the complaint that the defendant advised the plaintiff in writing on July 22, 1939, that it cancelled the contract. At that time the defendant had paid to the plaintiff or his assigns $5,454.66. The plaintiff now seeks to recover the sum of $7,045.34 upon the theory that he is entitled to $12,500 for the patents.

From the foregoing statement it will be seen that the question presented by this appeal is whether or not the provision in the original contract which gave the defendant the right to terminate the contract at any time by giving ten days' notice in writing to the inventor survived the supplemental agreement. It is alleged in the complaint that by the supplemental agreement the parties intended to provide that subject only to and contingent upon the granting of the letters patent referred to, the defendant would pay to the plaintiff the full sum of $12,500 without any right of cancellation or termination on the part of the defendant and to make the $12,500 payment at the rate of $150 or more per month. The defendant, on the other hand, takes the position that the right of cancellation on ten days' notice survived and that the provisions of the contracts are unambiguous and that their terms control over any inconsistent allegations in the complaint.

1. These contract exhibits are the very foundation of the cause of action to which they relate, and, being made a part of the complaint by its allegations, the sufficiency of the pleading as a matter of law to establish a cause of action may be determined by the terms of the exhibits. Where their provisions are plain and unambiguous they must prevail over inconsistent allegations in the complaint, and their sufficiency may be determined upon demurrer. Union Sewer Pipe Co. v. Olson, 82 Minn. 187, 84 N. W. 756.

The supplemental contract provides:

"* * * except as herein modified or changed in any respect, all of the provisions contained in said two former agreements are hereby renewed and confirmed by the parties hereto."

In the first contract there was a provision relied upon by the defendant for a cancellation of the contract upon ten days' notice. Both contracts provided that when the defendant should have paid $12,500 it should not be liable for further payment of royalties and should be entitled to an assignment of the patents. The supplemental contract states that upon the payment of the $12,500:

"Then all of said royalty agreements shall be immediately cancelled and the Manufacturer shall not be held liable for the payment of any further royalties."

The fact that the second agreement uses the word "cancelled" in the last cited paragraph is largely relied upon by plaintiff as indicating an intent to supersede the ten-day provision in the original contract. It is the plaintiff's contention that this provision is meaningless and adds nothing to the previous paragraph unless so interpreted. The previous paragraph merely provides that upon payment of $12,500 assignments of the patents shall be made to defendant. As we view the contracts, the two last paragraphs in the supplemental contract merely restate what was provided in one paragraph of the first agreement, namely, that when $12,500 should have been paid the patents were to be assigned and no further payments required. The use of the word "cancelled" may have been unfortunate, but it does not create an ambiguity because it so obviously refers to a situation where the contract is completely performed and on that account is no longer in reality subject to cancellation. The word in its context merely signifies termination of liability for further royalties.

The plaintiff further relies upon the provision in the supplemental contract that "the fulfillment of this agreement is subject only to and contingent upon the granting" of the patents. The first contract provided that if the plaintiff's "application for pat-

ent which is now pending be denied, this contract shall terminate and the Inventor shall promptly repay to the Manufacturer all moneys which may have been paid to him as royalties," including advances and costs of patent applications. "Fulfillment" in the supplemental contract obviously means "performance." In short, the sentence means "no patents, no royalties." In view of the clause renewing and confirming the unmodified and unchanged provisions of the original contract, we must consider that "this agreement" means the two contracts taken by the four corners and construed as a whole. So construed, we have seen that the ten-day cancellation clause stands unmodified and unchanged by the supplemental contract. We think that is clear.

Order affirmed.